UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DONNIE SMITH, ) | |
| ) | |
| Petitioner, ) | |
| ) | Nos. 3:16-CR-122-TAV-HBG |
| v. ) | 3:18-CV-331-TAV-HBG |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**REPORT AND RECOMMENDATION**

Petitioner previously filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. [Doc. 2].[1] United States District Judge Thomas A. Varlan referred [Doc. 20] this case to the undersigned for a report and recommendation regarding disposition of Petitioner's claim that his former counsel failed to file a requested direct appeal. The Court held an evidentiary hearing on August 12, 2021. Assistant United States Attorney Brian Samuelson appeared on behalf of the Government. Attorney Ruth Thompson Ellis appeared on behalf of Petitioner Donnie Smith, who was also present. For the reasons set forth herein, the Court **RECOMMENDS** that the sole remaining claim in Petitioner's § 2255 motion be **GRANTED**.

**I.   BACKGROUND**

Petitioner was indicted on October 18, 2016, for conspiring to distribute fifty grams or more of methamphetamine [Doc. 1, 3:16-CR-122]. Attorney Donny M. Young was appointed to represent Petitioner on November 8, 2016 [Doc. 7, 3:16-CR-122]. A plea agreement was filed on January 9, 2017, and Petitioner entered a guilty plea to the single count in the Indictment on

---

[1] Unless otherwise indicated, all citations to the record are found on the docket of case number 3:18-cv-331-TAV-HBG.

January 17, 2017 [Docs. 15, 16, & 18, 3:16-CR-122]. On April 7, 2017, the United States Probation Office issued a Presentence Investigation Report ("PSR"), which was revised on April 21, 2017, to reflect that Petitioner is classified as a career offender and to increase his advisory guideline range to 262 to 327 months [Docs. 19 SEALED, 20 SEALED, & 21 SEALED, 3:16-CR-122]. On May 9, 2017, the Probation Office notified the Court that neither party objected to the PSR [Doc. 23 SEALED, 3:16-CR-122].

Following the revision of the PSR, Petitioner filed a *pro se* motion requesting new counsel [Doc. 22, 3:16-CR-122]. This motion was referred to the undersigned, and the Court held a hearing on the motion on May 30, 2017 [Docs. 24 & 26, 3:16-CR-122]. The Court declined to substitute counsel, finding that Petitioner's "concerns appear to arise from issues that were not within counsel's control" [Doc. 27, 3:16-CR-122]. The Court asked the United States Marshals Service to detain Petitioner locally, so he could review the revised PSR with counsel, discuss the available options, and prepare for his sentencing hearing[2] [Doc. 27, 3:16-CR-122]. On July 10, 2017, Mr. Young filed a notice that, after reviewing the full report with counsel, Petitioner had no objection to the revised PSR [Doc. 30, 3:16-CR-122]. On July 17, 2017, defense counsel filed a Sentencing Memorandum, stating only that the PSR accurately reflects the Petitioner's history and characteristics and accurately calculates the guideline range [Doc 31, 3:16-CR-122]. On July 26, 2017, after the July 19 sentencing hearing was continued to August 17, defense counsel submitted a Supplemental Sentencing Memorandum, arguing for a sentence significantly below the guideline range [Doc. 33 SEALED, 3:16-CR-122].

---

[2]At the time of the May 30, 2017 motion hearing before the undersigned, Petitioner's sentencing hearing was scheduled for July 19, 2017. On July 19, 2017, Petitioner's sentencing hearing was reset to August 17, 2017.

At the August 17, 2017 sentencing hearing, District Judge Varlan sentenced the Petitioner to a term of imprisonment of 235 months [Docs 40 & 41, 3:16-CR-122]. The Judgment of conviction was entered that same day [Doc. 41, 3:16-CR-122]. "Consistent with the waiver provision in his plea agreement, Petitioner did not file a direct appeal" [Doc. 20, pp.1-2].

On November 3, 2017, two and one-half months after his sentencing hearing, the Court received a letter from Petitioner, dated October 31, 2017, requesting transcripts of his sentencing hearing and of the motion hearing before the undersigned and a copy of his docket sheet, to assist him in preparing a "2255" [Doc. 45, 3:16-CR-122]. This letter does not mention a direct appeal. On November 6, 2017, the Clerk of Court mailed Petitioner a Copy Request Notice, stating the fee for a copy of the docket sheet and directing Petitioner to contact the court reporter to order transcripts [Doc. 46, 3:16-CR-122].

On December 27, 2017, the Court received a letter from Petitioner, dated December 21, 2017, asking whether a notice of appeal was filed [Doc. 47, 3:16-CR-122]. In this letter, Petitioner relates that he contacted his attorney more than forty-five (45) days ago and that neither he nor his family has received a response from counsel. Attached to this letter is a copy of a letter from Petitioner to Mr. Young, which is dated November 9, 2017, and states "I'm writing to follow up to find out if you filed a notice of appeal per my instruction" [Doc. 47, p.2, 3:16-CR-122]. The letter also asks Mr. Young for a copy of all documents relating to his case and for transcripts of his change of plea hearing, motion hearing, and sentencing hearing [Doc. 47, 3:16-CR-122].

On August 13, 2018, Petitioner filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, raising the issue of ineffective assistance of counsel, because counsel failed to file a notice of appeal and failed to appeal his sentence as he requested [Doc. 2]. In support of this motion, Petitioner filed an unsworn Affidavit, in which he

3

states that Judge Varlan informed him he had the right to appeal at the sentencing hearing [Doc. 4, p.1]. Petitioner states that he told Mr. Young that he wanted to appeal his sentence and the determination that he is a career offender [Doc. 4, p.1]. Petitioner states that Mr. Young said "he would file the 'necessary paperwork' and that he would visit me at the Roger D. Wilson detention facility to discuss my concerns about the sentence and the appeal" [Doc. 4, p.1]. In the Affidavit, Petitioner states that despite numerous attempts by both him and his family, he was not able to contact Mr. Young about his direct appeal [Doc. 4, pp.1-2]. Defendant attached to his Affidavit a letter from Mr. Young, which is dated April 12, 2018, and states it is "[i]n response to your letter dated 11/9/2017" [Doc. 4, p.5]. In this letter, Mr. Young states "[r]egarding your appeal, I do not recall you asking me to file an appeal. As you are aware, you waived your rights to appeal your sentence and/or conviction in your plea agreement with certain exceptions (See enclosed page 6 of Plea Agreement)" [Doc. 4, p.5].

Judge Varlan referred the case to the undersigned for an evidentiary hearing on "whether Petitioner timely requested that Attorney Young file a notice of appeal on his behalf" [Doc. 20, p.11]. The District Judge also directed the undersigned to appoint counsel to represent Petitioner on this one issue and to file a report and recommendation as to the merits of the claim that Mr. Young failed to file a requested appeal [Doc. 20, p.11]. Subsequently, the Court appointed Attorney Ellis to represent Petitioner in the evidentiary hearing. [Doc. 21]. As stated above, the Court held an evidentiary hearing August 12, 2021.

## II. SUMMARY OF THE TESTIMONY

At the August 12 evidentiary hearing, the Government called Attorney Donny M. Young, who testified that he was licensed in 1979 and practices primarily criminal defense law. He stated that when a criminal defendant asks him to file a notice of appeal, he is required to do so. Mr.

4

Young represented Petitioner and that he remembers Petitioner's case "fairly well," although it has been over four years ago. Mr. Young said he remembers most of his cases, "especially if something traumatic happened." Mr. Young said he reviewed his calendar from 2016 and 2017 and his case file and searched his email and text messages to refresh his recollection about Petitioner's case. Mr. Young testified that Petitioner did not ask him to file a notice of appeal in his case and that if Petitioner had requested that he file a notice of appeal, he would have filed one.

Mr. Young stated that he discussed the appellate waiver in the plea agreement with Petitioner thoroughly, because he knew the District Judge would question Petitioner about that provision. He said that at that time, Petitioner did not indicate he wanted to or planned to appeal. Mr. Young stated that two days before the sentencing hearing, he met with Petitioner for one hour. He said they did not discuss an appeal or Petitioner's appellate options during that meeting, nor did Petitioner ask him to file a notice of appeal or say he wanted to appeal. Mr. Young testified that going into sentencing, Petitioner had not said he wanted to appeal.

Mr. Young did not recall if he spoke with Petitioner before the sentencing hearing but stated he did not speak with Petitioner after the sentencing hearing. He agreed that any comments between him and Petitioner would have appeared on the transcript of the sentencing hearing. Mr. Young stated that Petitioner did not ask him to file a notice of appeal at the sentencing hearing. He said he did not remember Petitioner begging him to file a notice of appeal and that no one has to beg him to do something. He agreed that he would have remembered if Petitioner had begged him to file a notice of appeal.

Mr. Young said that he received a letter from Petitioner dated November 9, 2017, requesting the status of his appeal. He said he was surprised, because this was the first he had heard that Petitioner requested an appeal. Mr. Young said he did not remember Petitioner asking

for an appeal and that is why he responded to Petitioner that he did not recall a request for an appeal. He said Petitioner's letter was the first indication he had that Petitioner wanted an appeal.

Mr. Young stated that he responded to Petitioner by letter on April 12, 2018, that he did not recall Petitioner asking to appeal. He said he wrote this, because it is the truth and to date, he does not recall Petitioner asking him to file an appeal. Mr. Young did not recall why he copied the Tennessee Board of Professional Responsibility on his April 12 letter. He said he could not find any documentation that Petitioner filed a complaint with the Board. Mr. Young said other than the November 9 letter, he received no other communication from Petitioner or his family about anything following the sentencing hearing. Mr. Young agreed that Petitioner's November 9 letter and his responding April 12 letter were the extent of any communications he had with Petitioner about a requested appeal.

On cross-examination, Mr. Young agreed that he responded to Petitioner's letter five months later and that, in his letter, he told Petitioner that he did not recall Petitioner asking him to appeal. He said he met with Petitioner several times to discuss his career offender status, he reviewed Petitioner's prior convictions, and he reviewed the guidelines with Petitioner. Mr. Young said that Petitioner knew going into his sentencing hearing that he was classified as a career offender. He met with Petitioner on at least two occasions about his career offender status. He said he got this case in November 2016, and Petitioner signed the plea agreement in January 2017, which was fast. He said Petitioner understood to what he was pleading and that he went over the plea agreement thoroughly with Petitioner, as he does with all his clients. Mr. Young said he requested copies of Petitioner's indictments and judgments from his two prior cases. He said he met with Petitioner a total of three times.

6

Petitioner Donnie Smith testified in his own behalf that he remembers the change of plea hearing and sentencing hearing in this case almost word for word, because it was a very significant event in his life. He said he met with Mr. Young twice regarding his plea agreement. The first time, Mr. Young discussed the plea agreement with him, but this initial plea agreement was not accepted by the Government. The second time, they met for Petitioner to sign another plea agreement, and they discussed the FOIA waiver. He said Mr. Young "went through" the plea agreement but did not discuss other waivers. Petitioner said Mr. Young told him if he signed this plea agreement, he had a chance to get a ten-year sentence, instead of a life sentence. He said he never discussed career criminal status with Mr. Young.

Petitioner said after three months, he was transferred to Hendersonville, Kentucky. He said he and Mr. Young had a breakdown in communication regarding the PSR,[3] which he discussed at a hearing before the undersigned. Thereafter, he spoke with Mr. Young by phone, and Mr. Young said he filed no objection to the PSR and that there was now an addendum to the PSR that increased his guideline range to 262 to 374 months. He said he was transferred from Hendersonville to Knoxville for his sentencing hearing. Petitioner said Mr. Young came to see him in the holding cell, told him he had filed a sentencing memorandum, and that he would ask for the bottom of the guideline range. Petitioner said he told Mr. Young that he would not accept 262 months. Petitioner testified that Mr. Young told him that he had been a lawyer for fifteen years and he was not filing an objection. Mr. Young said he would file a second sentencing memorandum. Petitioner said he did not remember them discussing an appeal at that time.

Petitioner stated that Mr. Young met with him in the holding cell on the day of and before his sentencing hearing. He said Mr. Young had sent him a letter a week before sentencing, that

---

[3] Petitioner referred to the Presentence Investigation Report as the "PSI."

discussed the addendum, which stated his two prior convictions would be used for career offender status. Petitioner said when Mr. Young came to see him in the holding cell before his sentencing hearing, they did not discuss an appeal. Instead, Mr. Young told him that he would try to get a sentence at the bottom of the guideline range.

Petitioner testified that at the end of the sentencing hearing, when he was sitting in a chair in Judge Varlan's courtroom, he asked Mr. Young to file an appeal. Petitioner said Mr. Young replied that he would come to the jail to see him, but he never came. He said he was at counsel table when he asked Mr. Young to file a notice of appeal on the career offender status, because his two prior convictions were the equivalent of the same offense. Petitioner said while sitting at counsel table just after the sentencing hearing is the only time they discussed an appeal. He said he was not able to reach Mr. Young by telephone while he was at the penal farm and that his sister left Mr. Young several messages but he never returned her calls.

Defendant said he later filed a complaint against Mr. Young with the Tennessee Board of Professional Responsibility, because he had asked Mr. Young for a complete copy of his file, but Mr. Young did not respond.

Petitioner swore that he instructed Mr. Young to file an appeal. Petitioner said Mr. Young responded that he would be over to the penal farm to see the Petitioner and they would discuss it. However, Petitioner never saw Mr. Young after that.

On cross-examination, Petitioner said he discussed the plea agreement with Mr. Young before he entered a guilty plea. He stated that Mr. Young told him he was facing a guideline range of 140 to 175 months. He said they discussed the FOIA waiver in the plea agreement, but he did not recall discussing an appeal. He agreed that he and Mr. Young discussed the waiver of appeal in the plea agreement. Petitioner said he had no reason to appeal at that time because he had a

8

guideline range of 140 to 175 months.  Petitioner said he did not get notice he was facing career offender status until he was transferred to Hendersonville, Kentucky, and he received a letter from Mr. Young about the addendum.  He agreed when he and Mr. Young discussed his plea agreement, he did not request an appeal.

Petitioner agreed that at no time before his sentencing hearing, did he discuss with Mr. Young that he wanted to file an appeal.  He said in the United States Marshal's holding cell before sentencing, they only discussed the sentencing memorandum.  He denied meeting with Mr. Young two days before the sentencing hearing, because he was still in Hendersonville, Kentucky.

Petitioner agreed that he remembered Judge Varlan advising him at the sentencing hearing that he had a right to appeal within fourteen days.  He agreed he was aware of the short deadline. Petitioner did not recall Judge Varlan stating that the Clerk of Court could file a notice of appeal on his behalf if he requested it.  He said he asked Mr. Young to file a notice of appeal for him, because Mr. Young was his attorney.  Petitioner said he did not get to talk to the Clerk and did not ask the Clerk to file a notice of appeal for him.  He stated that he only knew about the career offender status a week before sentencing.  Petitioner said at the close of the proceedings, he said to Mr. Young, "You're going to appeal this, right?"  He said he asked Mr. Young to please file an appeal of his career offender status because the two predicate convictions were the same offense. Petitioner said Mr. Young replied he would be over to the penal farm to see Petitioner and would discuss it with him then.  Petitioner said this was the extent of their conversation.

Petitioner said three weeks after his sentencing hearing he was transferred to Oscilla.  He remained in Oscilla four to six weeks before he was designated to a prison.  He said when he finally arrived at the prison in Coleman, Florida, he wrote the Clerk of Court, asking whether a notice of appeal was filed.  Petitioner said the Clerk said there was no notice of appeal filed in his case.

9

While Petitioner did not remember the date of this notice from the Clerk, it is on the docket in his criminal case. Petitioner agreed a letter dated October 31, 2017, was the letter he sent to the Clerk of Court. Upon reviewing the letter, Petitioner agreed that it did not mention a notice of appeal. He explained that he sent this October 31 letter in reference to Mr. Young failing to provide a copy of his file. Petitioner said Mr. Young told him that he would not get the transcripts and that Petitioner would have to pay for them.

Petitioner agreed that his sentencing hearing was in August 2017 and that he had two weeks to file an appeal; however, he had not met with Mr. Young two months later. Petitioner said after he learned from the Clerk of Court that there was no notice of appeal, he wrote to Mr. Young asking why he did not file a notice of appeal and asking for a copy of his file and transcripts. Referring to his November 9, 2017 letter to Mr. Young, Petitioner agreed he asked Mr. Young about the notice of appeal. He agreed this was several months after his sentencing hearing. Petitioner said he wrote a second letter to the Court in December 2017, stating he contacted his attorney over forty-five days ago and had not received a response. Petitioner agreed that this was referring to the November 9 letter to Mr. Young. Petitioner agreed that he did not state in the December letter that at sentencing, he had asked his attorney to file a notice of appeal. He said he thought his attorney would do it without him having to ask.

On redirect examination, Petitioner said he did not write Mr. Young within fourteen days of his sentencing hearing. He said he thought when he asked Mr. Young to file an appeal, Mr. Young would do as he instructed. Petitioner agreed that the October 31 letter was his first opportunity to write a letter. He said he wrote the November 9 letter to find out why Mr. Young had not filed a notice of appeal. When he received no response from Mr. Young, he wrote the Clerk of Court in December 2017. He said in the December 21, 2017 letter, he asked again if a

10

Case 3:18-cv-00331-TAV-HBG Document 26 Filed 08/19/21 Page 10 of 18
PageID #: 154

notice of appeal had been filed.  Petitioner agreed he wrote three letters following his sentencing hearing:  An October 31 letter to the Clerk regarding his file, the November 9 letter to Mr. Young, and the December 21 letter to the Clerk about the appeal.  Petitioner said he received a letter from Mr. Young dated April 12, 2018.  In this letter, Mr. Young said he did not recall Petitioner asking him to file an appeal.

Petitioner agreed that when he received the proposed plea agreement, Mr. Young told him his guideline range was 140-175 months.  He said they did not discuss him being a career offender.  Petitioner said at this time, he had no reason to discuss filing an appeal with Mr. Young.  Petitioner said he signed two plea agreements.

Petitioner said that this evidentiary hearing is the first time he has seen Mr. Young since his sentencing hearing.  He said the April 12, 2018 letter was the only correspondence he received from Mr. Young following his sentencing hearing.  Petitioner stated that he felt his attorney had failed him.

### III.    POSITIONS OF THE PARTIES

Petitioner argues that he is entitled to relief pursuant to 28 U.S.C. § 2255, because Mr. Young deprived him of his right to appeal by failing to file a notice of appeal after he requested that Mr. Young do so [Doc. 3, p.1].  Specifically, Petitioner contends that "during sentencing," he "begged" Mr. Young to file an appeal of his sentence, and he was "assured that an appeal would be filed [Doc. 3, p.3].  He argues that Mr. Young's disregard of his specific instruction to file an appeal was professionally unreasonable [Doc. 3, p.3].

The Government responds [Doc. 9] in opposition, arguing that while counsel's failure to file a notice of appeal after a specific instruction to do so is professionally unreasonable, here Petitioner does not allege he timely requested an appeal.  It states that a November 2017 letter to

counsel indicates Petitioner asked about an appeal long after the deadline expired and that counsel responded he did not recall Defendant requesting an appeal. The Government maintains that because Petitioner does not allege that he requested an appeal within the time period for filing one, his claim should be denied as factually unsupported. Alternatively, it argues that if there is a factual dispute, the Court should hold an evidentiary hearing on this issue.

In reply, Petitioner contends that he "expressly requested an appeal at the only time he had contact with defense counsel, the day of sentencing" [Doc. 10, p.2], which was timely. Citing to *Garza v. Idaho*, Petitioner argues that counsel cannot disregard a specific request for appeal based on his belief that an appeal is meritless [Doc. 15, Supplemental Reply]. *See* 139 S. Ct. 738, 746-47 (2019). Instead, Petitioner argues that if a defendant instructs counsel to file a notice of appeal, counsel must file the notice of appeal, even if he files an *Anders* brief. He contends that if counsel disregards a specific request to appeal, prejudice is presumed, and he does not have to show that his appeal would have been meritorious. Petitioner asks the Court to grant him a delayed appeal.

At the evidentiary hearing, the Government argued that Petitioner has not carried his burden of showing he received the ineffective assistance of counsel. AUSA Samuelson contended that Mr. Young is a seasoned practitioner who clearly understood his obligation to file a notice of appeal, if requested to do so. He asserts that Mr. Young's testimony that he did not recall Petitioner asking him to file an appeal is consistent with his letter to Petitioner. The Government argues that in contrast, Petitioner acknowledged that he waived his right to appeal in his plea agreement and Petitioner's first letter to the Court did not mention a notice of appeal but, instead, requested documents to prepare his § 2255 motion. AUSA Samuelson argued that Petitioner's second letter to the Court in December 2017 states he attempted to contact counsel over forty-five days ago, which is well outside the two-week period to file a notice of appeal. Additionally, the Government

12

contended that Petitioner did not state in his December letter that he asked counsel at sentencing to file an appeal. The Government argued that the letters in the record are consistent with Mr. Young's account of the events, not Petitioner's account.

Ms. Ellis argued that when Petitioner told Mr. Young to file an appeal, he was relying on counsel to do so. She asserted that as a practical matter, Petitioner was finally able to write a letter to the Court on October 31, 2017, after arriving at his designated prison where he could get paper, a pen, and postage. She said shortly thereafter, on November 9, 2017, Petitioner wrote to Mr. Young, asking if he filed a notice of appeal per Petitioner's instruction. Ms. Ellis argued that when he heard nothing from counsel, Petitioner wrote to the Court asking about his appeal and finally asked the Board of Professional Responsibility to step in. Ms. Ellis maintained that Mr. Young responded to Petitioner's letter five months later, stating he did not recall Petitioner requesting an appeal. Ms. Ellis argued that Petitioner had one federal case, which he testified he remembered clearly. She asserted Mr. Young has had many federal cases this year alone and is not able to remember as clearly. Ms. Ellis submitted that the testimony and letters support a finding that Petitioner asked Mr. Young to file a notice of appeal.

## IV. ANALYSIS

A federal prisoner may move the Court to vacate, correct, or set aside the sentence, if "the sentence was imposed in violation of the Constitution." 28 U.S.C. §2255(a). For the petitioner to obtain relief, the record must reflect a constitutional error of such magnitude that it "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). The burden is on the petitioner to establish the claims arising out of the petition. *Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977).

When the alleged constitutional error is ineffective assistance of counsel, the petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). That is, the petitioner must: (1) establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Strickland,* 466 U.S. at 687, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005); and (2) demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694.

In the context of an appeal, "it is 'professionally unreasonable' for a lawyer to fail to file an appeal when specifically instructed to do so." *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003) (quoting *Flores–Ortega*, 528 U.S. at 477). "[T]he failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see Flores–Ortega*, 528 U.S. at 477. Therefore, if counsel fails to file a direct appeal upon request, a defendant is entitled to a delayed appeal without having to show any likelihood of success on the merits. *Flores–Ortega,* 528 U.S. at 477; *see Regalado*, 334 F.3d at 525.

Absent explicit instructions to appeal, an attorney is only required to consult with his client about the advantages and disadvantages of an appeal and ascertain the client's wishes. *Regalado*, 334 F.3d at 525. "If consultation occurred, then '[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's *express instructions* with respect to an appeal.'" *Id.* (quoting *Flores–Ortega,* 528 U.S. at 478). However, if counsel failed to consult with his client, then the court must address whether this alone is indicative of deficient performance. *Id.*

14

In this case, the Court finds that Petitioner established by a preponderance of the evidence that he specifically asked Attorney Young to file an appeal on his behalf. Petitioner affirmatively testified that following the conclusion of his sentencing hearing and while still seated at the table with counsel, he asked Mr. Young to appeal his career offender status. Petitioner said Mr. Young responded that he would come to the jail to meet with Petitioner, and they would discuss it then. Thereafter, Petitioner did not have any further communication with Mr. Young, until Mr. Young's April 12, 2018 letter, which stated he did not recall Petitioner asking him to file a notice of appeal.

In contrast, Mr. Young testified that he did not recall Petitioner asking him to file a notice of appeal. Mr. Young initially testified that Petitioner did not ask him to file a notice of appeal, because if he had, Mr. Young would have filed the notice of appeal. Mr. Young testified that he remembers Petitioner's case "fairly well" and that he refreshed his recollection of this case by reviewing his calendar, his case file, and his email. However, Petitioner's comments immediately after the sentencing hearing were not likely to be documented in any of those records, nor would a private conversation between defense counsel and his client have appeared on the transcript of the sentencing hearing. Mr. Young testified he was surprised when he received Petitioner's November 9, 2017 letter asking about an appeal, because he did not remember Petitioner asking him to file an appeal. Mr. Young said his statement in the letter, that he did not recall Petitioner asking him to appeal was true and that to this day, he does not recall Petitioner asking him to file an appeal.

The Court finds that Petitioner's positive testimony that he asked Mr. Young to file an appeal overcomes Mr. Young's neutral testimony that he does not recall Petitioner asking him to appeal. *United States v. Livingston*, Nos. 3:10–CR–88–TAV–HBG, 3:12–CV–49–TAV, 2015 WL 6873585, *4 (E.D. Tenn. Nov. 9, 2015) (Report and Recommendation), *accepted in whole* (Varlan,

15

DJ). While there is some discrepancy in Petitioner's account of Mr. Young's response to his request to appeal,[4] Petitioner's testimony that after his sentencing hearing, he asked Mr. Young to file an appeal is consistent with his filings and supported by his November 9, 2017 letter to counsel and his December 21, 2017 letter to the Court. The Court finds the Petitioner has shown that it is more likely than not that he asked his attorney to file an appeal.

The Government argues that the appeal waiver in Petitioner's plea agreement contradicts Petitioner's assertion that he requested an appeal. However, the fact a defendant has waived his right to appeal does not relieve counsel of his duty to file a notice of appeal, if timely asked to do so. *Garza*, 139 S. Ct. at 747 & 749-50. When a defendant shows that counsel failed to file a notice of appeal, despite the defendant's express instruction to do so, thereby depriving defendant of a direct appeal that he intended to take, defendant has shown that he received the ineffective assistance of counsel without having to show that the appeal would have succeeded on the merits. *Id.* at 747 (citing *Flores-Ortega,* 528 U.S. at 480-84). "[T]he presumption of prejudice recognized in *Flores-Ortega* applies regardless of whether a defendant has signed an appeal waiver." *Id.* at 749. Additionally, Petitioner testified that Judge Varlan advised him at the sentencing hearing that he had a right to appeal and that he had to file a notice of appeal within fourteen days. This advice occurred at the end of the sentencing hearing [Doc. 49, p.36, 3:16-CR-122] and, thus, would have been fresh in Petitioner's mind as he sat at the table with Mr. Young waiting for the paperwork to be completed.

---

[4]In his brief, Petitioner states that counsel assured him he would appeal [Doc. 3, p.3]. In his Affidavit accompanying the brief, Petitioner states that counsel said he would file the "necessary paperwork" [Doc. 4, p.1]. During the August 12, 2021 evidentiary hearing, Petitioner testified that Mr. Young said he would come to the jail to discuss filing an appeal. While these accounts vary in the details of the response, they are consistent with Petitioner's professed impression that when he left the sentencing hearing, he thought Mr. Young was filing a notice of appeal for him.

16

The Government also argues that Petitioner's delay in raising the issue of the notice of appeal until his letter of December 21, 2017, reveals he did not timely request that Mr. Young file an appeal. Petitioner testified he was relying on his attorney to file the notice of appeal, as he instructed, and that he was not in a position to write a letter until he arrived at his designated prison in Coleman, Florida, some eight or nine weeks after his sentencing hearing. The Court finds that Petitioner was likely not aware that counsel had not filed a notice of appeal when he wrote to counsel on November 9, 2017, because in response to his October 31 request for a docket sheet, he was informed the copy fee was $3.00. In other words, Petitioner had not received a copy of the docket sheet at the time he wrote counsel. On November 9, Petitioner wrote to counsel, stating "I'm writing to follow up to find out if you filed a notice of appeal per my instruction" [Doc. 47, 3:16-CR-122]. When Petitioner received no response from counsel, he wrote to the Court again in December 2017, asking whether "my notice of appeal has been filed" [Doc. 47, 3:16-CR-122]. The record contains a fourth letter from Petitioner to the Court, dated February 20, 2018, and received February 26, 2018 [Doc. 48, 3:16-CR-122]. In this letter, Petitioner states that he has designated funds to pay for a docket sheet, which he is still seeking, and that he previously asked the Court "if my attorney filed a notice of appeal in my behalf, 17 August 2017 Sentencing" [Doc. 48, 3:16-CR-122]. The Court finds this series of letters is consistent with Petitioner's testimony that after his sentencing hearing concluded, he asked Mr. Young to file an appeal.

Petitioner testified that he asked Mr. Young to file a notice of appeal, while they were seated at the table following his sentencing hearing. Mr. Young's failure to file a notice of appeal following this express and timely request to do so constitutes deficient performance. *Regalado*, 334 F.3d at 524 (holding lawyer's failure to file an appeal when requested to do so is "professionally unreasonable); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). Thus,

17

Case 3:18-cv-00331-TAV-HBG Document 26 Filed 08/19/21 Page 17 of 18
PageID #: 161

the Court finds that Petitioner is entitled to a delayed appeal, regardless of the potential merits of that appeal. *See Regalado*, 334 F.3d at 525

## V. CONCLUSION

For the reasons expressed herein, the Court **RECOMMENDS** that the sole remaining claim in Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [**Doc. 2**] regarding Petitioner's claim that Attorney Young failed to file a requested appeal be **GRANTED** and that Petitioner be granted a delayed direct appeal of his sentence.[5] Because the undersigned recommends that the Petitioner's motion be granted, a certificate of appealability is not necessary in this case. *See* Fed. R. Gov. §2255 Proc. 11 (providing that the court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant").

Respectfully submitted,

Bruce Guyton
United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

18